UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 3:23-CR-00047 |
| v. | ) | |
| | ) | Judge Campbell |
| WILLARD M. WEST | ) | |

## PLEA AGREEMENT

The United States of America, through Glenn S. Leon, Chief, Fraud Section, United States Department of Justice, and Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and Trial Attorney Leslie Williams Fisher, and Defendant, Willard M. West, through Defendant's counsel, Peter Strianse, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1. Defendant acknowledges that he has been charged in the Information in this case with three counts of distributing Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2. Defendant has read the charges against him contained in the Information. The charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, Defendant agrees to enter a voluntary plea of guilty to Counts 1 through 3 of the Information, charging unlawful distribution of Schedule II controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)

## Penalties

4. The three counts of the Information each carry the following maximum penalties: 20 years' imprisonment, at least 3 years of supervised release, a $1,000,000 fine, and a $100 special assessment. The parties understand and agree that the offense to which Defendant will enter a plea of guilty carries the following maximum penalties: 20 years' imprisonment, at least 3 years of supervised release, a $1,000,000 fine, and a $100 special assessment. Defendant also understands that a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future, regardless of whether the defendant currently has lawful temporary or permanent resident status.

## Acknowledgements and Waivers Regarding Plea of Guilty

## Nature of Plea Agreement

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Department of Justice, Fraud Section and Defendant regarding Defendant's criminal liability in case 3:23-CR-00047.

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

   a. If Defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if Defendant, the government, and the Court all agreed to have no jury.

   b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising

2

so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent; that the government bears the burden of proving Defendant guilty of the charge(s) beyond a reasonable doubt; and that it must consider each count of the Information against Defendant separately.

    c.    If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of Defendant's guilt beyond a reasonable doubt.

    d.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

    e.    At a trial, Defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7.    Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

8.    Defendant previously surrendered his Drug Enforcement Administration controlled substance registration numbers ("DEA numbers"). Defendant understands, acknowledges, and agrees that as a result of this Plea Agreement, he will be permanently prohibited from obtaining or

3

maintaining a DEA number. Defendant has entered into a consent order with the State of Tennessee Department of Health to surrender to his medical license, license number 9741. Defendant agrees to never seek reinstatement of said license or a license to practice as a medical doctor in any other state.

## Factual Basis

9. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 through 3 of the Information. In pleading guilty, Defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Defendant was a medical doctor who was licensed by the State of Tennessee Department of Health, Board of Examiners under license number 9741 on April 27, 1976. Defendant was registered with the Drug Enforcement Administration (DEA) to prescribe controlled substances under registration numbers AW7245194 and XW7245194.

Defendant operated a medical clinic located in Lebanon, Tennessee, in the Middle District of Tennessee. Beginning in March 2020, Defendant began seeing patients via telemedicine from his residence, also located in Lebanon, Tennessee. As part of his medical practice, Defendant prescribed controlled substances, including opioids.

Defendant prescribed Schedule II controlled substances, including oxycodone, to his patients outside the usual course of professional practice and without a legitimate medical purpose. Defendant prescribed patients, including patients V.K. and K.H., the dangerous combination of opioids and benzodiazepines. Defendant also prescribed patients the dangerous "trinity" combination of opioids, benzodiazepines, and muscle relaxers. Defendant also prescribed patients, including patient V.K., opioids after treating them for opioid addiction.

4

On or about June 3, 2019, in the Middle District of Tennessee, Defendant did knowingly and intentionally distribute to Patient V.K. a prescription for oxycodone-acetaminophen (oxycodone), a Schedule II controlled substance, without a legitimate medical purpose and outside the usual course of professional practice.

On or about January 14, 2020, in the Middle District of Tennessee, Defendant did knowingly and intentionally distribute to Patient C.M. a prescription for oxycodone-acetaminophen (oxycodone), a Schedule II controlled substance, without a legitimate medical purpose and outside the usual course of professional practice.

On or about October 14, 2020, in the Middle District of Tennessee, Defendant did knowingly and intentionally distribute to Patient K.H. a prescription for oxycodone, a Schedule II controlled substance, without a legitimate medical purpose and outside the usual course of professional practice.

Defendant also acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter U.S.S.G.), the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. § 1B1.3: on or about the dates set forth below, in the Middle District of Tennessee, Defendant knowingly and intentionally distributed, as set forth below, oxycodone, oxymorphone, and hydrocodone, which are Schedule II controlled substances, without a legitimate medical purpose and outside the usual course of professional practice:

| Approximate Date of Distribution | Individual | Controlled Substance |
|---|---|---|
| May 7, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| May 1, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| April 8, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| April 1, 2019 | V.K. | Oxycodone |
| March 26, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| March 20, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| March 13, 2019 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| May 26, 2018 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| May 19, 2018 2016 | V.K. | Oxymorphone |
| May 18, 2016 | V.K. | Oxycodone |
| May 7, 2016 | V.K. | Oxymorphone |
| May 5, 2016 | V.K. | Oxycodone |
| April 8, 2016 | V.K. | Oxymorphone |
| April 5, 2016 | V.K. | Oxycodone |
| March 9, 2016 | V.K. | Oxymorphone |
| March 4, 2016 | V.K. | Oxycodone |
| February 8, 2016 | V.K. | Oxymorphone |
| February 5, 2016 | V.K. | Oxycodone |
| January 9, 2016 | V.K. | Oxymorphone |
| January 6, 2016 | V.K. | Oxycodone-Acetaminophen (Oxycodone) |
| December 17, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| November 18, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| October 15, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| September 18, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| August 21, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| July 22, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| June 21, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| May 15, 2019 | C.M. | Oxycodone-Acetaminophen (Oxycodone) |
| April 15, 2019 | C.M. | Hydrocodone-Acetaminophen (Hydrocodone) |
| September 16, 2020 | K.H. | Oxycodone |
| August 18, 2020 | K.H. | Oxycodone |
| July 7, 2020 | K.H. | Oxycodone |
| June 9, 2020 | K.H. | Oxycodone |
| May 4, 2020 | K.H. | Oxycodone |
| February 14, 2020 | K.H. | Oxycodone |
| January 22, 2020 | K.H. | Oxycodone |
| December 18, 2019 | K.H. | Oxycodone |

| Approximate Date of Distribution | Individual | Controlled Substance |
|---|---|---|
| November 19, 2019 | K.H. | Oxycodone |
| October 22, 2019 | K.H. | Oxycodone |
| September 17, 2019 | K.H. | Oxycodone |
| August 21, 2019 | K.H. | Oxycodone |
| July 22, 2019 | K.H. | Oxycodone |
| July 10, 2019 | K.H. | Oxycodone |

This statement of facts is provided to assist the Court in determining whether a factual basis exists for Defendant's plea of guilty and criminal forfeiture and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to Defendant and to the United States concerning Defendant's and/or others' involvement in the offense conduct and other matters.

## Sentencing Guidelines Calculations

10. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing Defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2018, and reprinted September 15, 2021.

11. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and Defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

    a. Offense Level Calculations.

        i. The base offense level for the counts of conviction and relevant conduct is 24, pursuant to U.S.S.G. § 2D1.1(c)(8).

7

ii. Pursuant to U.S.S.G. § 3B1.3, Defendant will receive a 2-level increase because he abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense.

iii. Assuming Defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming Defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because Defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

b. **Recommended Offense Level.** Therefore, the parties agree to recommend to the Court a final offense level, prior to any downward departure, of 23 (hereinafter the Recommended Offense Level). The parties further agree that they will not seek to apply any other specific offense characteristics, enhancements, or reductions. Defendant understands that the offense level as ultimately determined by the Court prior to any downward departure (the court-determined offense level) may be different from the Recommended Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court prior to any downward departure (the court-determined guidelines range) may be based on an offense level different from the Recommended Offense Level.

8

c.  The government would not oppose a variance of up to three levels, due to the physical and/or mental condition of Defendant, provided the condition(s) warranting such a defense motion are sufficiently established before the Court at the time of sentencing.

12. The parties have no agreement concerning the anticipated Criminal History Category.

13. Defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, Defendant will have no right to withdraw his guilty plea.

## Agreements Relating to Sentencing

14. Each party is free to recommend whatever sentence it deems appropriate.

15. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing

9

recommendation of the parties, Defendant will have no right to withdraw his guilty plea. Similarly, Defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

16. Defendant agrees to pay the special assessment of $100 for each count of conviction at the time of sentencing to the Clerk of the U.S. District Court.

**Presentence Investigation Report/Post-Sentence Supervision**

17. Defendant understands that the United States Department of Justice, Fraud Section, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of Defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

18. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Department of Justice, Fraud Section, regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United

10

States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against Defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Department of Justice, Fraud Section, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

20. The parties jointly request that the Court accept Defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

21. Regarding the issue of guilt, Defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, Defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Recommended Offense Level when combined with Defendant's criminal history category as determined by the Court. Defendant further waives all appellate rights and all collateral attacks concerning forfeiture and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness,

prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the guideline range associated with the Recommended Offense Level when combined with Defendant's criminal history category; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. § 5K1.1.

## Other Terms

22. Defendant agrees to cooperate with the United States Department of Justice, Fraud Section, in collecting any unpaid fine and restitution for which Defendant is liable, including providing financial statements and supporting records as requested by the United States Department of Justice, Fraud Section. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property Defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

23. Defendant agrees to cooperate with the IRS in any tax examination or audit of Defendant that directly or indirectly relates to or arises out of the course of conduct Defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes Defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

24. Should Defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, Defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

12

25. Defendant further expressly waives his rights pursuant to Rule 410(a) of the Federal Rules of Evidence upon affixing his signature to this Plea Agreement. Defendant understands and agrees that in the event Defendant violates the Plea Agreement, Defendant does not enter his plea of guilty, or his guilty plea is for any reason withdrawn, any statements made by Defendant to law enforcement agents or an attorney for the prosecuting authority during plea discussions, any statements made by Defendant during any court proceeding involving Defendant's plea of guilty, including the "agreed facts" set forth herein, any other factual bases or summaries signed by Defendant, and any leads from such statements, factual bases or summaries, shall be admissible for all purposes against Defendant in any and all criminal actions. If the United States violates the terms of this Plea Agreement, Defendant will have the right to withdraw from this Agreement.

## Conclusion

26. Defendant understands that the Information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute Defendant not subject to any of the limits set forth in this Plea Agreement, or may require Defendant's specific performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits Defendant to withdraw from this Plea Agreement, or Defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute Defendant, any prosecutions that are not time-

barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against Defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

28. Defendant and his attorney acknowledge that no threats have been made to cause Defendant to plead guilty.

29. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

30. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Information. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 5/22/23

Willard M. West
Defendant

30. <u>Defense Counsel Signature:</u> I am counsel for Defendant in this case. I have fully explained to Defendant his rights with respect to the pending Information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to Defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 5/22/23

Peter Strianse

14

Attorney for Defendant

Respectfully submitted,

HENRY C. LEVENTIS,
United States Attorney
Middle District of Tennessee

GLENN S. LEON
Chief
Fraud Section, Criminal Division
United States Department of Justice

*/s/*
Leslie Williams Fisher
Trial Attorney
United States Department of Justice